**HACKNEY, INC., Petitioner,**

v.

**Ann McLAUGHLIN, Secretary of Labor, and Occupational Safety and Health Review Commission, Respondents.**

No. 88–2368.

United States Court of Appeals, Tenth Circuit.

Feb. 12, 1990.

Robert E. Rader, Jr. of Rader, Addison & Story, P.C., Dallas, Tex., for petitioner.

John Shortall, Attorney, U.S. Dept. of Labor (Jerry G. Thorn, Acting Sol. of Labor, Cynthia L. Attwood, Associate Sol. for Occupational Safety and Health, and Barbara Werthmann, Acting Counsel for Appellate Litigation, U.S. Dept. of Labor, with him on the brief), Washington, D.C., for respondents.

Before McKAY and LOGAN, Circuit Judges, and BOHANON, District Judge.*

McKAY, Circuit Judge.

In this appeal we are asked to review an enforcement action brought by the Secretary of Labor arising from an inspection by the Occupational Safety and Health Administration of a workplace operated by Hackney, Inc. Following the inspection, the Secretary issued a citation charging that Hackney had violated the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651 *et seq.* by failing to comply with the audiometric testing requirements of OSHA's hearing conservation program standard. 29 C.F.R. § 1910.95(c)(1) and (g) (1988). After hearing, the Occupational Safety and Health Review Commission judge held that Hackney had violated the Act and that its violations were "nonserious." [1] That decision became a final order of the Commission when no commission member directed review.

Hackney does not deny that it violated the Act. It seeks only to review the constitutionality of the search warrant and challenges the designation of the violations as nonserious rather than *de minimis.*

## I. The Constitutionality of the Search Warrant

We previously reviewed the search warrant in this case when Hackney refused to permit inspection pursuant to the warrant. *Donovan v. Hackney, Inc.,* 769 F.2d 650 (10th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 715 (1986). In that case we specifically held "that 'administrative probable cause' is satisfied in the instant case, as Hackney was randomly selected for inspection pursuant to a neutral inspection plan." *Id.* at 653. Our prior opinion did not, in our judgment, leave open the question as to whether the plan was neutral on its face, but only whether it was nonneutral as applied. We explained in a footnote that Hackney might be entitled to discovery or further proceedings on the neutrality of the plan as applied after the inspection was completed. *Id.* at 653 n. 2. This is the basis of Hackney's current challenge to the search warrant. Hackney now seeks discovery of facts concerning the plan in order to prove that it is not neutral as applied.

■ Hackney complains on this appeal that the Commission judge rejected its claim that it was entitled to discovery concerning: (1) the basic factors taken into account in establishing the plan, and (2) whether the plan was administered discriminatorily against Hackney in relationship to others similarly situated under the plan. The Commission judge rejected Hackney's claim for discovery concerning the criteria and neutrality of the plan, noting that the plan was to be tested by the application of the "four corners doctrine" which was adopted by the Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 158, 98 S.Ct. 2674,

---

* Honorable Luther Bohanon, United States Senior District Judge for the Northern, Eastern, and Western Districts of Oklahoma, sitting by designation.

1. The Act defines three categories of violations based on the gravity of harm that may be expected to result from a violation. *See Brennan v. Butler Lime & Cement Co.,* 520 F.2d 1011, 1019 n. 10 (7th Cir.1975). A violation is categorized as "serious" if "there is a substantial prob-

ability that death or serious harm could result" from the condition or practice that creates the violation. 29 U.S.C. § 666(k) (1982). A *"de minimis"* violation arises from a condition that has "no direct or immediate relationship to safety or health." 29 U.S.C. § 658(a) (1982). Violations that do not fit the descriptions of serious or *de minimis* are considered "nonserious." *See* 29 U.S.C. § 666(c) (1982).

2677, 57 L.Ed.2d 667 (1978). The "four corners doctrine" limits challenges to the validity of search warrants to review of the materials submitted to the magistrate. The Commission judge properly noted that the only exception to the doctrine applies where there is a preliminary showing that false evidence was presented to the magistrate, either intentionally or recklessly. *See Franks,* 438 U.S. 154, 158, 98 S.Ct. 2674, 2677, 57 L.Ed.2d 667 (1978). In its brief, Hackney cites no evidence that it presented to meet the *Franks v. Delaware* standard, nor are we able to discover any in the record. Thus, we affirm the trial court's holding that discovery concerning the plan should not be allowed in this case based on the *Franks* requirements. We also reemphasize our prior holding that settled the matter of the facial validity of the plan based on the materials submitted to the magistrate.

■ Hackney's principal argument on this appeal is that the inspections pursuant to the plan were applied discriminatorily against Hackney as compared to others similarly classified under the plan. Hackney argues that discovery concerning this issue must be allowed based on our earlier opinion which left open the questions of post-enforcement rights and plan validity as applied. We now conclude, however, that Hackney has not made the required preliminary showing of at least some discrimination by OSHA based on the plan. The only evidence Hackney presented to the judge consisted of the warrant application, the supporting affidavit, the attached copy of OSHA's inspection plan, and the warrant. We considered all that evidence in our prior review of this case. We also dealt with the claim that there were too many repeated inspections. We concluded that there was no basis for the claim that Hackney was singled out among those similarly situated for six excess inspections. We observed that there were, in fact, only three programmed inspections with appropriate follow-up inspections. *See id.* at 653 n. 1. Thus, Hackney has not made a preliminary showing of discrimination in the application of the plan. Without such a showing, we cannot authorize random dis-

covery into the plan's application. We conclude, therefore, that the Commission judge properly denied discovery or an evidentiary hearing directed toward an attack on the search warrant.

## II. Non-serious Versus De Minimus Violations

■ Hackney challenges the Commission's determination that the violations contained in the citation were nonserious rather than *de minimis.* The Commission determined that Hackney had failed to conduct regular audiometric testing of its employees as required by 29 C.F.R. § 1910.95(c) and (g) (1988). Hackney countered that it requires all of its employees to wear ear protectors so that it is not necessary to do audiometric testing. However, the basic rule in these regulatory cases is that the regulated business must "follow the law even if it has a good faith belief that its own policy is wiser." *RSR Corp. v. Brock,* 764 F.2d 355, 363 (5th Cir.1985). Once the violation is shown, the burden is on the business to demonstrate that there is no substantial difference between the protection afforded by its actual plan and that which is required by OSHA in order to qualify for a *de minimis* citation. *See Phoenix Roofing, Inc. v. Dole,* 874 F.2d 1027 (5th Cir.1989). In this case the Commission determined that audiometric testing would ascertain whether an employee had undergone a standard threshold shift in hearing which could, in turn, identify an employee who is improperly wearing his protection equipment. Record, vol. 4, at 268. The Commission in fact determined that audiometric testing is an essential component of a successful hearing conservation program because it makes possible the assessment of hearing loss and the prevention of further hearing loss before it becomes handicapping. Substantial evidence in the record supports this finding. It is confirmed by the decision of the Fourth Circuit in *Forging Industry Association v. Secretary of Labor,* 773 F.2d 1436, 1447–48 (4th Cir.1985). There the court held:

The usefulness of audiometric testing in evaluating an employee's hearing is obvious. Testing establishes an individual baseline standard to which an employee's hearing later may be compared in order to ascertain whether a hearing impairment is imminent. If hearing loss is not identified, ameliorative steps might never be taken. Additionally, audiometric testing is important to determine whether hearing protectors are operating properly. Although an audiometric test does not, in itself, alleviate hearing loss occasioned by noise exposure at an employee's workplace, the requirement relates to the purpose of protecting an employee's hearing.

Although Hackney has a policy that requires its employees to wear ear protectors, we must reject Hackney's claim that its policy is superior to the requirements under the regulations. Hackney's policy lacks the means of determining whether, in fact, the employees are complying with its mandatory protector policy or whether the protector equipment is effective. Even with its employee training and its required hearing protectors, Hackney's failure to conduct audiometric testing deprives the employer, as well as OSHA, of information necessary to determine whether the employee's hearing has remained undamaged by workplace noise. Substantial evidence in the record also supports the Commission's conclusion that Hackney may not rely on the attenuation capabilities of its hearing protection equipment reportedly measured under laboratory conditions. The Commission concluded that the attenuation achieved by hearing protectors in the field is only one-third that achieved in the laboratory.

### III. Conclusion

We conclude that there is no constitutional or other basis for attacking the validity of the search warrant pursuant to which these inspections were carried out. The Commission did not abuse its discretion in refusing to permit discovery or to hold a hearing with reference to Hackney's attempted challenge to the validity of the search warrant. We further hold that substantial evidence supports the Commission's determination that the violations contained in the citation were nonserious violations of the OSHA health standard at 29 C.F.R. § 1910.95(c)(1) (1988).

The decision of the Commission is AFFIRMED in all respects.