[No. F011506. Fifth Dist. Oct. 2, 1989.]

SALWASSER MANUFACTURING CO., INC., Plaintiff and Appellant, v.
OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, Defendant and Respondent;
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, Real Party in Interest and Respondent.

COUNSEL

Loomis, Sanoian & Garland and John E. Loomis for Plaintiff and Appellant.

Dennis M. Sullivan for Defendant and Respondent.

John K. Van de Kamp, Attorney General, Robert F. Tyler and Robert D. Milam, Deputy Attorneys General, for Real Party in Interest and Respondent.

OPINION

FRANSON, P. J.—

STATEMENT OF THE CASE AND FACTS

This appeal challenges the constitutional validity of an inspection warrant issued to representatives of real party in interest, the Division of Occupational Safety and Health, Department of Industrial Relations (Division), to inspect appellant Salwasser Manufacturing Co., Inc.'s (Salwasser) place of business pursuant to the California Occupational Safety and Health Act (Cal-OSHA). (Lab. Code, §§ 6300-6711.)

On January 30, 1986, one of Salwasser's employees telephoned the Division regarding employment conditions at Salwasser's facility. He claimed numerous safety order violations existed at the plant. An industrial hygienist and two safety engineers employed by the Division discussed these alleged safety order violations with the complainant on at least three occasions. Based on these conversations, the Division personnel formed the belief that violations of Cal-OSHA probably existed at Salwasser's plant. The industrial hygienist, who had been in contact with the complainant, prepared a declaration describing these events and submitted it to the superior court. On February 18, 1986, the superior court issued a warrant authorizing inspection of the Salwasser facility for the purpose of insuring compliance with Cal-OSHA.

On February 19, 1986, after having been refused entry pursuant to the warrant, a Division representative conducted a nonconsensual inspection of the premises. The next day the Division issued citations to Salwasser alleging 15 regulatory and 4 serious safety order violations.

Salwasser appealed to respondent, Occupational Health and Safety Appeals Board, Department of Industrial Relations (Board), contesting the validity of the inspection warrant and the search of the premises. Salwasser sought to suppress introduction or consideration of the evidence obtained by virtue of the inspection. However, it was stipulated that if the inspection

warrant were found to be valid, the evidence proved the existence of all violations alleged, the violations were classified properly, and the proposed abatement times and changes were reasonable. The Board denied Salwasser's appeal.

Thereafter, Salwasser filed a petition for writ of mandate in the superior court. The court denied the petition finding the declaration's safety violation allegations supported the warrant, and the scope of the search was not overly broad.

## DISCUSSION

### I. *The standard of probable cause required for a Cal-OSHA inspection warrant.*

Salwasser argues that before a valid Cal-OSHA inspection warrant can be issued based on an employee complaint, the standards pertaining to the issuance of a criminal search warrant must be met. Salwasser relies on this court's decision in *Salwasser Manufacturing Co.* v. *Municipal Court* (1979) 94 Cal.App.3d 223 [156 Cal.Rptr. 292] (*Salwasser I*), to support this contention.

In *Salwasser I,* a warrant was issued to enter Salwasser's place of business for a routine safety inspection pursuant to Cal-OSHA. Such a "routine" inspection is one made at random or of a selected area or industry without any particularized knowledge that a violation presently exists on the premises to be searched. (94 Cal.App.3d at p. 227, fn. 2.) In *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727], the Supreme Court held that, in the context of enforcement of a municipal housing code, such an "area inspection" is a " 'reasonable' search of private property within the meaning of the Fourth Amendment," and consequently, " 'probable cause,' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling." (*Id.* at p. 538 [18 L.Ed.2d at p. 941].) The court applied this standard to commercial premises as well in *See* v. *City of Seattle* (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737]. Salwasser refused the inspectors access to the premises and was charged in the municipal court with violating Code of Civil Procedure section 1822.57, which makes it a misdemeanor to willfully refuse to permit an administrative inspection authorized by a warrant.

In *Marshall* v. *Barlow's, Inc.* (1978) 436 U.S. 307 [56 L.Ed.2d 305, 98 S.Ct. 1816], the Supreme Court held that a warrant is required under the

Fourth Amendment for federal Occupational Safety and Health Act (OSHA) inspections despite contrary statutory authority. The court adopted the standard for issuance of administrative warrants set forth in *Camara v. Municipal Court, supra,* 387 U.S. 523 and *See v. City of Seattle, supra,* 387 U.S. 541. Thus, a federal OSHA inspection warrant can be based on a "routine" inspection scheme, i.e., "a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'" (*Marshall v. Barlow's, Inc., supra,* at p. 320 [56 L.Ed.2d at p. 316].) Nevertheless, due to the potential criminal sanctions for Cal-OSHA violations, which do not exist for federal OSHA violations, this court held in *Salwasser I* "that the search and seizure requirements of the Fourth Amendment and article I, section 13 of the California Constitution mandate a probable cause requirement for inspection warrants" under Cal-OSHA. (*Salwasser I, supra,* 94 Cal.App.3d at p. 231.) This court concluded that since the affidavit supporting the warrant did not "show probable cause to believe that safety violations currently existed" on Salwasser's premises, the warrant authorized an unreasonable intrusion into Salwasser's privacy in violation of the federal and California Constitutions.[1] (*Id.* at p. 234.)

In the present case, Salwasser interprets this "probable cause" standard as requiring compliance with the Penal Code. Thus, Salwasser asserts that a Cal-OSHA warrant must be issued to a peace officer, must specify an activity or a condition which may be a crime and must contain independent corroboration of the complainant's statements in order to provide "a substantial basis for crediting the hearsay declaration." However, this construction of *Salwasser I* is too broad. The holding of *Salwasser I* was that routine inspections are not permissible under Cal-OSHA. The level of scrutiny which is required when a warrant application is founded on specific

---

[1] There is a question regarding the continuing viability of *Salwasser I* following the enactment of Proposition 8. *Camara v. Municipal Court, supra,* 387 U.S. 523, upon which *Marshall v. Barlow's, Inc., supra,* 436 U.S. 307 was based, concerned inspections pursuant to a municipal housing ordinance containing criminal penalties similar to those included in the Cal-OSHA scheme. (387 U.S. at p. 527, fn. 2 [18 L.Ed.2d at p. 934].) However, despite the potential criminal penalties, the United States Supreme Court held that warrants based on "reasonable legislative or administrative standards for conducting an area inspection" were valid under the Fourth Amendment. (*Id.* at p. 538 [18 L.Ed.2d at p. 941].) In so holding, the court noted that these inspections were "neither personal in nature nor aimed at the discovery of evidence of crime." (*Id.* at p. 537 [18 L.Ed.2d at p. 940].) Thus, the *Salwasser I* criminal penalty distinction may not be sound under the federal Constitution alone. Cal-OSHA inspections are not "aimed" at the discovery of criminal evidence, but, rather, are aimed at enforcing standards to assure safe and healthful working conditions for employees. (Lab. Code, § 6300.) However, this issue is not currently before the court and therefore need not be decided. The warrant at issue was based on specific allegations of Cal-OSHA violations, not a "routine area inspection."

evidence was not before the *Salwasser I* court. That, however, is the issue which is before the court now.

"In cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." (*Camara* v. *Municipal Court, supra,* 387 U.S. 523, 534 [18 L.Ed.2d 930, 939].) "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." (*Illinois* v. *Gates* (1983) 462 U.S. 213, 232 [76 L.Ed.2d 527, 544, 103 S.Ct. 2317].) Probable cause is a " 'practical, nontechnical conception' " dealing with " 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " (*Id.* at p. 231 [76 L.Ed.2d at p. 544].) "Unfortunately, there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." (*Camara* v. *Municipal Court, supra,* 387 U.S. at pp. 536-537 [18 L.Ed.2d at p. 940].)

Salwasser's position that a criminal probable cause standard is applicable where a warrant is based on an employee complaint has been presented to and rejected by several federal circuit courts with respect to OSHA inspections. As noted by the court in *Marshall* v. *Horn Seed Co., Inc.* (10th Cir. 1981) 647 F.2d 96, 99, the circuit court decisions involving such inspection warrants have uniformly applied the lesser standard of administrative probable cause. The courts have reached this conclusion by interpreting the statement in *Marshall* v. *Barlow's, Inc., supra,* 436 U.S. 307, 320 [56 L.Ed.2d 305, 316], that "Probable cause in the criminal law sense is not required" as applying to both warrants based on specific evidence of an existing violation and warrants based on "routine" inspections. (*Marshall* v. *Horn Seed Co., Inc., supra,* 647 F.2d 96, 99; *Burkart Randall Div. of Textron, Inc.* v. *Marshall* (7th Cir. 1980) 625 F.2d 1313, 1317, fn. 4; *Matter of Establishment Inspection, etc.* (7th Cir. 1979) 589 F.2d 1335, 1338; *U.S.* v. *Establishment Inspection of: Jeep Corp.* (6th Cir. 1988) 836 F.2d 1026, 1027.)

The circuit courts have attempted to define the parameters of this "lesser standard of administrative probable cause." Of course any inspection under this standard must be reasonable: the public interest in the inspection must outweigh the invasion of privacy which the inspection entails. (*Burkart Randall Div. of Textron, Inc.* v. *Marshall, supra,* 625 F.2d 1313, 1319.) As observed by the court in *U.S.* v. *Establishment Inspection of: Jeep Corp., supra,* " 'the evidence of a specific violation required to establish administra-

tive probable cause, while less than that needed to show a probability of a violation, must at least show that the proposed inspection is based upon a reasonable belief that a violation has been or is being committed. . . . This requirement is met by a showing of specific evidence sufficient to support a reasonable suspicion of a violation.' " (836 F.2d at p. 1027, quoting *West Point-Pepperell, Inc.* v. *Donovan* (11th Cir. 1982) 689 F.2d 950.) However, to say that the same degree of probable cause is not required is not to say that no consideration need be given to the concerns focused on in the criminal setting. (*Marshall* v. *Horn Seed Co., Inc., supra,* 647 F.2d 96, 102.) Thus, when the warrant application is based on specific evidence of violations, ". . . there must be some plausible basis for believing that a violation is *likely* to be found. The facts offered must be sufficient to warrant further investigation or testing.

"By necessity, such a determination requires the magistrate to consider the reliability of the information tendered in support of the application. Again, a criminal standard is not imposed. Although a 'substantial basis' is not required to credit the information's reliability, there must be some basis for believing that a complaint was actually made, that the complainant was sincere in his assertion that a violation exists, and that he had some plausible basis for entering a complaint." (647 F.2d at pp. 102-103.) Consequently, a conclusory statement in the application that employee complaints have been received by OSHA, without more, is insufficient to establish probable cause.

"The application must at least inform the Magistrate of the substance of the employee complaints, so that the Magistrate may exercise independent judgment as to whether an inspection is justified, rather than acting as a mere rubber stamp validating the decision already reached by the Secretary." (*Burkart Randall Div. of Textron, Inc.* v. *Marshall, supra,* 625 F.2d 1313, 1319.)

The thrust of these definitions of "administrative probable cause" is to provide guidance for what is reasonable under the circumstances. It is the primary object of the search which determines what type of probable cause showing is required. (*Michigan* v. *Clifford* (1984) 464 U.S. 287, 294 [78 L.Ed.2d 477, 484, 104 S.Ct. 641].) Thus, for example, following a fire of suspicious origin, entries by police and fire officials to investigate the cause of the fire may be made pursuant to the warrant procedures governing administrative searches, and evidence of arson discovered in the course of such investigation is admissible at trial. However, if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to

searches for evidence of crime. (*Michigan* v. *Tyler* (1978) 436 U.S. 499, 511-512 [56 L.Ed.2d 486, 500, 98 S.Ct. 1942].)

Salwasser's argument that Cal-OSHA warrants must be issued under the Penal Code highlights the unworkability of attempting to apply traditional standards of criminal probable cause to such searches. Under this scheme, nonconsensual searches based on employee complaints would almost never take place. A peace officer is not qualified to inspect for Cal-OSHA violations, and the safety violation allegations would rarely, if ever, demonstrate specific criminal activity. Further, due to the likely fear of reprisal on the part of other employees and the inspector's inability to directly observe an alleged hazardous condition, it would often be impossible to obtain direct corroboration of a safety complaint.

The primary purpose of a Cal-OSHA inspection is not to discover evidence of a crime but rather to enforce standards designed to assure safe and healthful working conditions for employees. (Lab. Code, § 6300.) In this context, the probable cause standards outlined for OSHA warrants based on employee complaints should also be applied to such Cal-OSHA warrants. Balancing the government interest in maintaining safe and healthful working conditions against the invasion of commercial premises to inspect for compliance with Cal-OSHA, the circuit court guidelines set forth above are reasonable. If a Cal-OSHA investigation should evolve into a criminal investigation, then further access to gather evidence would require a showing of traditional criminal probable cause. (Cf. *Michigan* v. *Tyler, supra,* 436 U.S. 499.)

II. *The present inspection warrant was constitutionally valid.*

■ The declaration in support of the warrant was submitted by Leonard Wilcox, a Division industrial hygienist. The declaration states that the Division received a telephonic complaint from one of Salwasser's employees who had been employed by Salwasser for over three years. In response, Jay Conde, a Division safety engineer, contacted the employee personally to further discuss the conditions described in the complaint. Conde found the employee to be forthright and motivated by a concern for the health and safety of Salwasser employees. Based on the conditions as described by the employee, Conde formed the opinion that 13 safety violations existed at Salwasser's premises. These alleged violations, described in detail in the declaration, include the absence of guards on several different types of machinery, the improper use of flammable liquids, unsafe electrical wires in several locations, inadequate spray paint areas and unsafe scaffolding.

Thereafter, Wilcox also personally contacted the employee. Wilcox found the employee's description of the Salwasser operation to be accurate and concluded that the matters complained of were based on the employee's personal knowledge. He also found the employee to be forthright and acting in good faith. The employee was contacted again both a week before the warrant was issued and the day the warrant was issued to confirm that the conditions still existed.

This declaration provided evidence that the proposed inspection was based on a reasonable belief that a violation had been or was being committed and thus supported issuance of the warrant. The details regarding the alleged safety violations and the number of violations listed informed the trial court of the substance of the employee complaint. Thus, the court could exercise independent judgment as to whether an inspection was justified. The fact that two experts who were familiar with the Salwasser operation discussed these allegations extensively with the employee provided a basis upon which to determine whether the information was reliable.

Salwasser attacks the sufficiency of the declaration by pointing to alleged discrepancies between the violations described in the declaration and the violations actually found. Salwasser also contends inadequacies exist in the declaration's descriptions of certain safety violations.

Although the majority of the violations found did not correspond to the specific regulation cited in the declaration, Salwasser was cited for violations similar to those described in the declaration. The inspector found inadequate guards on several pieces of machinery and flammable liquids being improperly stored, as alleged in the declaration. Since it is oftentimes impossible to identify the precise regulations violated until the employer's work site has been inspected, it is not necessary to cite specific regulations that may have been violated in the declaration. (*U.S.* v. *Establishment Inspection of: Jeep Corp., supra,* 836 F.2d 1026, 1027.)

Salwasser also objects to the use of the term "grinder" for "abrasive wheel" and the failure to specifically allege that lacquer thinner and "solvent" are flammable liquids. However, warrant affidavits are to be interpreted in a commonsense, rather than a hypertechnical, manner. (*Illinois* v. *Gates, supra,* 462 U.S. 213, 236 [76 L.Ed.2d 527, 547].) Reasonable and logical inferences must be drawn, and the court may consider matters of common knowledge. (*People* v. *Miller* (1978) 85 Cal.App.3d 194, 200 [149 Cal.Rptr. 204].) When reviewed under this standard, the declaration at issue was sufficient.

Finally, Salwasser asserts that the warrant was overbroad because it called for the inspection of the entire premises. The proper scope of an inspection warrant is determined by considering the information presented to the court in the warrant application. (*Matter of J. R. Simplot Co.* (9th Cir. 1981) 640 F.2d 1134, 1138.) If evidence is presented to the court that the deleterious conditions may be present throughout the facility, a warrant authorizing a full plant-wide inspection is justified. (*Donovan* v. *Fall River Foundry Co., Inc.* (7th Cir. 1983) 712 F.2d 1103, 1108.)

Here, the employee complaint included allegations concerning electrical wiring, cluttered aisles, solvents left "lying around the premises," machinery without guards and "excessive amounts of dust in the work place." These allegations did not relate to specific areas of the facility. Rather, the complaint implies that safety violations existed throughout the entire plant. Thus, the warrant authorizing the inspection of the entire premises was reasonable.

The judgment is affirmed. Respondent to recover costs on appeal.

Ardaiz, J., and Pettitt, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.